**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **CHARLES OWENS, NICHOLAS HUGHES,** *et al.*, **on behalf of themselves and all others similarly situated,** | |
| **Plaintiffs,** | |
| **v.** | **CIVIL ACTION NO. 4:13-CV-00520** |
| **MID AMERICA MORTGAGE, INC., f/k/a SCHMIDT MORTGAGE COMPANY, JEFFREY E. BODE AND MICHAEL KENNEMER,** | |
| **Defendants.** | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' EXPEDITED MOTION TO**
<u>**CONDITIONALLY CERTIFY A COLLECTIVE ACTION AND TO ISSUE NOTICE**</u>

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ........................................................................................... 1

II.    SUMMARY OF THE ARGUMENT ............................................................ 2

III.    BACKGROUND .......................................................................................... 4

    A.    Mid America and Its Business. ........................................................... 4

    B.    The Owens-Led Plaintiffs. ................................................................. 4

    C.    The Significance of the State Court Proceeding. .............................. 5

    D.    Despite Plaintiffs' Contentions This FLSA Case is Far From Typical. ............................. 6

    E.    The Department of Labor Reverses Its Longstanding Position as to the Administrative Exemption's Application to Loan Officers. ....................................................................... 7

IV.    ARGUMENT ................................................................................................ 9

    A.    Conditional Certification is Not Automatic. ..................................... 9

    B.    Plaintiffs' Putative Class, as Defined in Their Complaint, Was Not Subjected to a "Single Decision, Policy or Plan Violating the Provisions of the FLSA." .................................. 11

    C.    Loan Officers are Not a Group of Similarly Situated Potential Putative Class Members Subjected to a "Single Decision, Policy or Plan Violating the Provisions of the FLSA." 13

        1.    Pre- and Post- DOL change in FLSA interpretation creates dissimilar groups of Loan Officers. ................................................................................ 13

        2.    During the 18-month potential class period, Plaintiff Loan Officers' apparent failure to comply with Mid America policy renders them dissimilar to other Loan Officers. 15

        3.    Plaintiffs' claims are "off the clock" claims, which are rarely if ever certified. ........ 16

        4.    Within the Loan Officer subcategory, putative members would be subject to different statutes of limitation, thereby creating dissimilar subgroups. .................................... 18

        5.    Instructions by Owens to work off the clock create dissimilarity between Plaintiffs and other Loan Officers and cast doubt on willingness of others to opt in to this lawsuit. ............................................................................ 19

    D.    Branch Managers Officers are Not a Group of Similarly Situated Potential Putative Class Members. ..................................................................................... 21

        1.    Plaintiff Owens is Dissimilar To Any Putative Class of Branch Managers. .............. 21

        2.    Plaintiff Moody is Dissimilar To Any Putative Class of Branch Managers. .............. 22

i

E.    Account Executives Are Not a Group of Similarly Situated Potential Class Members. .. 23

F.    There is No Evidence Putative Class Members Will Opt In to the Other Putative Classes. 25

V.    CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**PAGE**

*Aguirre v. SBC Communications, Inc.*,
   No. Civ. A. H–05–3198, 2006 WL 964554 (S.D. Tex. Apr. 11, 2006)..................9, 10, 24
*Andel v. Patterson-UTI Drilling Company, LLC*,
   No. 6:10-cv-36 (S.D. Tex. Mar. 16, 2011) .......................................................10
*Badgett v. Tex. Taco Cabana, L.P.*,
   No. H-05-3624, 2006 WL 2934265 (S.D. Tex. Oct. 12, 2006) ..........................9
*Barrentine v. Arkansas-Best Freight System, Inc.*,
   450 U.S. 728, 739 (1981)..............................................................................7
*Bodle v. TXL Mortgage Corp.*,
   Civil Action No. H–12–1515, 2012 WL 5828616 (S.D. Tex. Oct. 2, 2012)................9, 11
*Butcher v. Delta Memorial Hospital*,
   No. 5:12CV00241, 2013 WL 1668998 (E.D. Ark. Apr. 17, 2013) .................................25
*Castle v. Wells Fargo Fin. Inc.*,
   No. C-06-4347-SI, 2008 WL 495705 (N.D. Cal. Feb. 20, 2008 ...............................17, 21
*D'Anna v. M.A.-Com, Inc.*,
   903 F.Supp. 889, 893-94 (D. Md. 1995)...........................................................9
*Dudley v. Texas Waste Systems, Inc.*,
   No. Civ. A. SA-05-CA-0078, 2005 WL 1140605 (W.D. Tex. May 16, 2005) .........17
*Ellerd v. County of L.A.*,
   No CV-08-4289, 2009 WL 982077 (C.D. Cal. Apr. 9, 2009) ..........................................12
*England v. New Century Fin. Corp.*,
   370 F.Supp.2d 504, 507 (M.D. La. 2005)...................................................10, 24
*Flores v. Lifeway Foods, Inc.*,
   289 F.Supp.2d 1042, 1046 (N.D. Ill. 2003) .......................................................16
*Griffith v. Wells Fargo Bank, N.A.*,
   Civil Action No. 4:11-CV-1440, 2012 WL 3985093 (S.D. Tex. Sept. 12, 2010) .......16, 20
*H & R Block, Ltd. v. Housden*,
   186 F.R.D. 399, 400 (E.D. Tex. 1999)..........................................................9, 10
*Harris v. Southwest Power Pool, Inc.*,
   No. 4:11CV00678, 2011 WL 5402763 (E.D. Ark. Nov. 8, 2011)..................................23
*Hinojos v. The Home Depot, Inc.*,
   No. 2:06-cv-00108, 2006 WL 3712944 (D. Nev. Dec. 1, 2006) ..................................17
*Lawrence v. City of Philadelphia, P.A.*,
   No. 03-CV-4009, 2004 WL 945139 (E.D. Pa. Apr. 29, 2004) ...........................................17
*Marsh v. Butler*,
   242 F.Supp.2d 1086, 1094 (M.D. Ala. 2003)..................................................17
*Mclaughlin v. Richland Shoe Co.*,
   486 U.S. 128, 133-34 (1988) .......................................................................18
*Mooney v. Aramco Services, Co.*,
   54 F.3d 1207, 1214 (5th Cir. 1995) ...............................................................10
*Ochoa v. Pearson Education, Inc.*,
   Civ. A. No. 11-cv-1382, 2012 WL 95340 (D.N.J. Jan. 12, 2012) ....................................18

iii

*Prizmic v. Armour, Inc.*,
    No.05-cv-2503, 2006 WL 1662614 (E.D.N.Y. June 12, 2006)............................................9

*Richardson v. Wells Fargo Bank, N.A.*,
    Civil Case No. 4:11-cv-00738, 2012 WL 334038 (S.D. Tex. Feb. 2, 2012) ....................20

*Rogers v. Ocean Cable Group Inc.*,
    Civil No. 10-4198, 2011 WL 6887154 (D.N.J. Dec. 29, 2011)...................................23, 24

*Santielices v. Cable Wiring, Inc.*,
    No. 98-7489CIV, 1999 WL 1007807 (S.D. Fla. Sept. 28, 1999) ....................................25

*Simmons v. T-Mobile USA, Inc.*,
    No. H-06-1820, 2007 WL 210008 (S.D. Tex. Jan. 24, 2007)....................................10, 24

*Songer v. Dillon Res., Inc.*,
    569 F.Supp.2d 703, 707 (N.D. Tex. 2008) ......................................................................10

*Thompson v. Speedway SuperAmerica LLC*,
    No. 08-CV-1107, 2009 WL 130069 (D. Minn. Jan. 20, 2009)....................................17

*Treme v. HKA Enters., Inc.*,
    No. 07-1134, 2008 WL 941777 (W.D. La. Apr. 7, 2008) ............................................9

*Velasquez v. HSBC Finance Corp.*,
    No. 08-4592-SC, 266 F.R.D. 424 (N.D. Ca. Feb. 18, 2010)...........................................17

*West v. Border Foods, Inc.*,
    No. 05-2525, 2006 WL 1892527 (D. Minn. July 10, 2006) ...........................................17

*Wilson v. Navika Capital Group, LLC*,
    Civil Action No. H-10-1569, 2011 WL 3020876 (S.D. Tex. July, 22 2011) ........10, 24, 25

Defendants Mid America Mortgage, Inc. ("Mid America"); Jeffrey E. Bode; and Michael Kennemer (collectively, "Defendants") file this Response to Plaintiffs' Expedited Motion to Conditionally Certify a Collective Action and to Issue Notice ("Plaintiffs' Motion"),[1] and would show the Court as follows:

## I.      INTRODUCTION

Plaintiffs seek conditional certification of a collective action as though they are properly situated to represent other unidentified employees and former employees of Mid America who purportedly will later opt-in to this Federal Labor Standards Act ("FLSA") action.  Plaintiffs have not only presented a skewed recitation of the alleged facts giving rise to their purported claims, but Plaintiffs have also misrepresented (or wholly omitted) facts that are critical to this Court's analysis of whether conditional certification should be granted, particularly with the named Plaintiffs as class representatives.

Defendants are aware that conditional certification is a procedural exercise that draws on the broad discretion of the Court and that courts are not required to consider the merits of underlying claims and defenses; however, Defendants are obligated to bring to the Court's attention relevant facts that undermine Plaintiffs' request for certification.

Most notably, Plaintiffs concede that all potential putative class members cannot constitute a single classification of employees.  *See* Plaintiffs' Motion at 13, Sec. B ("Because they are in three different job classifications, Plaintiffs request that the Court certify three separate subclasses: Loan Officers/Originators, Branch Managers, and Account Executives"). The job duties, responsibilities, pay structures, and compensation schemes vary so significantly that even Plaintiffs have parsed their request and asked this Court to designate three (3) separate

---

[1] If the Court chooses to conditionally certify any class proposed in Plaintiffs' Motion, Defendants have contemporaneously filed their Response to Plaintiffs' Form of Notice, addressing therein issues surrounding the notice proposed by Plaintiffs.

classes of employees for the purposes of conditional certification.  Notwithstanding Plaintiffs' disjunctive approach to certification, factual distinctions between and within the subcategories of putative class members warrant denial of Plaintiffs' Motion.[2]

## II.   SUMMARY OF THE ARGUMENT

Before this Court can conditionally certify a collective action, Plaintiffs must provide sufficient evidence of a company-wide illegal policy involving the claims asserted and that the alleged aggrieved individuals are similarly situated.  Plaintiffs define the putative class as "[a]ll current and former Loan Officers/Originators, Branch Managers, and Account Executives of Defendants" (Plaintiff's Second Amended Complaint ¶ 15 (Dkt. No. 17)), yet concede that no common policy or plan applies to the putative class members collectively.  *See* Plaintiffs' Motion at 1, 2, 5-7, 14-15.  Rather, Plaintiffs have carved out three (3) sub-categories of class members and, in effect, ask this Court to conditionally certify three (3) distinct collective actions, one for each sub-category.

Notwithstanding Plaintiffs' deconstructed approach, no common policy or plan regarding unpaid compensation applies to the potential putative class members of the collective category nor the sub-categories Plaintiffs propose because Mid America's formal policies regarding timekeeping and overtime compensation for all of its employees are legally acceptable and do not violate the FLSA.  In fact, if any violations occurred, they would have arisen out of Plaintiffs' failure to comply with Mid America's overtime policies rather than the policies themselves, thus creating individual issues and causing the putative representatives to be dissimilar to the putative class they seek to represent.  For example, Mid America required time sheets to be submitted and paid overtime to employees working over forty (40) hours per week,

---

[2] Given the alleged multiple subclasses, the factual issues creating dissimilarity in and among those subclasses, and the interplay within the alleged class period of the change in DOL FLSA interpretation and Defendants' own policies affected by that change, Defendants believe an oral hearing will aid this Court in resolving the issues presented by Plaintiffs' Motion.  Thus, Defendants respectfully request an oral hearing on Plaintiffs' Motion.

yet, not one of Plaintiffs ever submitted time records to Mid America reporting overtime hours worked.  The amount of pay due an employee cannot be determined without knowing the total number of hours actually worked by that employee in each workweek.

Conditional certification should also be denied because Plaintiffs are uniquely situated when compared to other potential putative class members.  All the Plaintiffs hail from a single office in Magnolia, Texas (the "Magnolia Branch"), and the alleged irregularities with overtime are relegated to that Branch.  All the Plaintiffs worked under one manager, Plaintiff Charles Owens, who led a deliberate campaign to manipulate time entries and decrease reported overtime hours within the Branch in order to increase his own compensation.  All Plaintiffs heeded the influence of their former manager and left Mid America to work for a company formed by Plaintiff Owens.  These distinctions make all of the named Plaintiffs unsuitable to serve as class representatives because a highly individualized inquiry into Plaintiffs' claims is required.

Additionally, Plaintiff Owens (the purported class representative for the Branch Managers) bears culpability for any alleged overtime violations because he directed Mid America employees, including Plaintiffs, not to record hours worked in excess of forty (40) hours per week, and Plaintiffs may have complied.  Plaintiff Owens and Plaintiff Nicholas Hughes (the purported class representative for the Account Executives) have irreconcilable conflicts of interest due to pending litigation brought against them by Mid America in a Texas State court.

Plaintiffs ask this Court to disregard all the facts above—which are firmly based in law and fact—and conditionally certify this collective action.  Based on the sordid history among the Parties, Defendants have reason to conclude that this entire lawsuit is an aggregate attempt to advance a personal vendetta.  Notwithstanding, Plaintiffs have no legal or factual basis for conditional certification, and this Court must deny Plaintiffs' Motion.

### III.   BACKGROUND

**A.   MID AMERICA AND ITS BUSINESS.**

Mid America is a full service mortgage bank that has established its presence as a national leader in the mortgage industry.  In 2010, President and Owner Jeffrey E. Bode, had the foresight to merge the rich history of Schmidt Mortgage Company—founded in 1959—with the advanced technology of Moncor, Inc.—to reform a business model focused on providing simplified processes for mortgage loans using the latest technology.  Today, Mid America operates twenty-six (26) branch locations nationwide with approximately three hundred (300) employees and provides services in most areas of mortgage lending, ranging from purchase lending to refinancing.  *See* Decl. of Kim Nguyen ("Nguyen Decl.") at ¶ 3, Ex. A.

**B.   THE OWENS-LED PLAINTIFFS.**

All the Plaintiffs were formerly employed by Mid America in the Magnolia Branch, during overlapping time periods.  *See id.* at ¶¶ 5-6, 15, 19, 23.  Plaintiff Owens served as Branch Manager of the Magnolia Branch from September 21, 2009 to June 15, 2011.  *See id.* at ¶ 23.[3] As Branch Manager, Plaintiff Owens supervised the Operations Manager, Jamie Naleway;[4] Account Executive (and Plaintiff) Nicholas Hughes; and all full-time and part-time Loan Officers in the Magnolia Branch—which included 9 of the 11 named Plaintiffs.[5]  *See id.* at ¶¶ 7, 19, 23, 29.  Plaintiff Hughes held the position of Account Executive from July 31, 2008 to June 17, 2011.  *See id.* at ¶ 15.  Plaintiff Milton Moody was a part-time Senior Loan Officer until March of 2011, when Plaintiff Owens promoted Plaintiff Moody to "Group Manager," a title and

---

[3] During his employment, Plaintiff Owens gave himself the title of "Regional Sales Manager," which does not otherwise exist within Mid America.  *See id.* ¶ 23.

[4] Jamie Naleway is not a party in this FLSA lawsuit, but she is a defendant in the Texas state court proceeding and related to this lawsuit.

[5] Plaintiffs Anthony Jared White, Carolyn Knigge, and Ronald E. Hargrove were employed as full-time Loan Officers until their resignations to join Plaintiff Owens' new company in June 2011.  Plaintiffs Graham Dodson, Shane Guillory, Clayton Gray, Milton Moody, Nicolas Phillips, and Leah Stanger who were all employed as part-time Loan Officers until the end of 2010, when they converted to full-time employment for the six to seven month period before they resigned to join Plaintiff Owens in June/July 2011.  *See id.* at ¶¶ 5-6.

job position that does not otherwise exist within Mid America.  *See id.* at ¶¶ 19-21.  The remaining Plaintiffs were all Loan Officers at varying times under the supervision of Plaintiff Owens.  *See id.* at ¶¶ 5-6.

In June or July of 2011, in a mass exit lead by Plaintiff Owens, each of the Plaintiffs left Mid America to join Plaintiff Owens' newly-formed mortgage company.  *See id.* at ¶¶ 7, 15, 19.  The surreptitious nature of Plaintiffs' mass exit lead to strained interactions with Mid America personnel, executives and clients, and ultimately resulted in a lawsuit.

## C.   THE SIGNIFICANCE OF THE STATE COURT PROCEEDING.

As they were leaving Mid America, Charles Owens, Nicholas Hughes, and Jamie Naleway (1) removed computers and files from the Magnolia Branch, (2) misappropriated Mid America's registered trade name "Core Lending," and (3) attempted to evict Mid America from the leased premises.  *See* Plaintiffs' Second Amended Original Petition at ¶¶ 9-12, Ex. B.[6]  Mid America also learned that Charles Owens, while employed with Mid America, had been secretly and directly competing with Mid America by brokering other loans or deals, not reporting the proceeds from these outside transactions, and keeping the money earned for himself.  *Id.* at ¶ 8.  Accordingly, Mid America sued Charles Owens and Nicholas Hughes on or about June 23, 2011, for breach of fiduciary duty, fraud, conspiracy, tortious interference with existing and/or prospective contracts, wrongful appropriation of trade secrets/conversion, and unjust enrichment.  *Id.*  That lawsuit is currently pending in the Montgomery County, Texas District Court (the "State Court Proceeding").

Significantly, Charles Owens has asserted a counterclaim in the State Court Proceeding alleging that Mid America failed to pay him properly for commissions earned on loans he originated while working for Mid America.  *See* Defendant Charles Patterson Owens' Third

---

[6] Mid America was formerly known as Schmidt Mortgage and is referred to as Schmidt Mortgage in the State Court Proceeding's Petition.  *See* Ex. B.

Amended Counterclaim, Ex. C.  The allegations of the counterclaim bear critical significance on the FLSA claims asserted in this Lawsuit because the State Court must determine whether Owens is entitled to unpaid commissions. In this lawsuit, Plaintiff Owens alleges that he was a nonexempt employee under the FLSA and was entitled to overtime pay.  Under the FLSA, commissions are computed in the regular rate of pay used to determine amounts due for overtime compensation.  Thus, Plaintiff Owens' FLSA claims in this case are irrevocably intertwined with his counterclaim in the State Court Proceeding.

Two different courts potentially using two different formulas to determine Charles Owens' rate of pay creates a conflict that is impossible to reconcile.  Moreover, the FLSA claims, which can be brought in state or federal court, are compulsory claims in the State Court Proceeding.  This procedural quagmire further distinguishes Plaintiff Owens from any other putative class members.  To the extent Plaintiff Owens seeks to gain leverage in the State Court Proceeding by filing unsupportable claims under the FLSA and causing further disruption to Mid America's business operations, Plaintiff Owens should not be allowed to misuse federal law in such a way.

## D.   DESPITE PLAINTIFFS' CONTENTIONS THIS FLSA CASE IS FAR FROM TYPICAL.

Plaintiffs filed this FLSA action in February 2013—eight (8) months after the State Court Proceeding was initiated—claiming they were denied overtime pay for the 18-month period from January 2010 to June 2011.  Plaintiffs amended their pleadings on May 15, 2013, to add additional claims for unpaid minimum wages.  On June 3, 2013, Defendants filed their First Amended Answer and Counterclaim against Plaintiff Owens (Dkt. No. 28) for fraud and conspiracy in connection with his manipulation of Loan Officers' time entry, which is the underlying basis for the alleged overtime violations.

In addition to many of the key facts described above—that Plaintiffs curiously omitted—Plaintiffs also try to conceal other relevant facts that distinguish this case from other FLSA cases. For instance, during the eighteen (18) months at issue in this case, Plaintiff Owens was paid upward of One Million Dollars ($1,000,000.00) in compensation—an average monthly income of over $55,500.  Similarly, Plaintiff Hughes, during the same eighteen (18) month period, was paid over Five Hundred Thousand Dollars ($500,000.00) in compensation, averaging over $28,000 a month.  Notwithstanding their high compensation, Plaintiffs now audaciously claim entitlement to not just overtime compensation, but minimum wage compensation as well.  It appears that just as Plaintiffs Owens and Hughes recruited ex-Mid America employees to their new competing mortgage business, they have also recruited them to join them in this campaign borne of personal animosity, not legal wrong.

By design, the FLSA is intended to provide "a fair day's pay for a fair day's work." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981).  As the Supreme Court explains, the FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours…."  *Id.*  The FLSA was not created to make millionaires into multi-millionaires.  One would think if Plaintiffs Owens and Hughes had a problem with their six and seven figure incomes from January 2010 to June 2011, they would have complained sooner.

E.     **THE DEPARTMENT OF LABOR REVERSES ITS LONGSTANDING POSITION AS TO THE ADMINISTRATIVE EXEMPTION'S APPLICATION TO LOAN OFFICERS.**

The change in the Department of Labor ("DOL") policy is pivotal in the factual and legal analysis of not only the motion to conditionally certify, but also the underlying merits of this case.  Historically, and prior to 2010, mortgage loan officers were classified by the DOL as exempt under the FLSA pursuant to the administrative exemption set forth in 29 U.S.C. § 213 and 29 C.F.R. § 541.200(a).  The Wage and Hour Division of the DOL issued an interpretation

letter on September 8, 2006, instructing mortgage companies that "mortgage loan officers…are exempt administrative employees." U.S. Department of Labor Wage and Hour Division September 8, 2006 Opinion Letter, FLSA2006-31 (the "2006 Interpretation Letter"), Ex. D. As such, Mid America classified its loan officers as exempt under the FLSA and compensated them accordingly, in compliance with federal law. Nguyen Decl. at ¶¶ 10-12, Ex. A.

On March 24, 2010, the DOL withdrew the 2006 Interpretation letter *See* U.S. Department of Labor Wage and Hour Division Administrator's Interpretation No. 2010-1 (March 24, 2010) (the "2010 Interpretation Letter"), Ex. E. In the new 2010 Interpretation Letter, the DOL reversed its prior decision and found that most mortgage loan officers do not qualify for the administrative exemption. *Id.*

This change in DOL interpretation is critical in deciding Plaintiffs' Motion because Mid America responded immediately to the DOL's policy change and undertook significant efforts to: (1) reclassify its loan officers, (2) change its corporate policies, (3) implement new procedures, and (4) amend its practices, in order to fully comply with newly issued interpretation. *See* Nguyen Decl. at ¶ 11, Ex. A. By January 1, 2011, Mid America's formal policies regarding timekeeping and overtime compensation for loan officers were fully revised, and a mandatory time entry system was in place, which automatically compensated the no-longer-exempt employees for overtime worked. *Id.* at ¶¶ 12, 14.

Mid America's actions in response to the 2010 Interpretation Letter are significant to the extent they create three (3) sub-groups within the Loan Officer subcategory, employees compensated before and after the changes were implemented. These sub-groups further distinguish potential putative class members and highlight the dissimilarities that predominate, preventing conditional certification.

# IV.    ARGUMENT

## A.    CONDITIONAL CERTIFICATION IS NOT AUTOMATIC.

Plaintiffs bear the burden of proof on a motion for conditional certification and must persuade the Court not only that similarly situated employees exist but that <u>giving notice to these employees is a worthwhile exercise of the Court's discretion</u>.  *See, e.g., Badgett v. Tex. Taco Cabana, L.P.*, No. H-05-3624, 2006 WL 2934265, at *1-2 (S.D. Tex. Oct. 12, 2006), Ex. J (emphasis added), (citing *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999); *D'Anna v. M.A.-Com, Inc.*, 903 F.Supp. 889, 893-94 (D. Md. 1995)).

Although the first stage of the *Lusardi* test "is lenient, <u>it is not automatic</u>."  *Badgett,* 2006 WL 2934265, at *2, Ex. J (emphasis added).  Even in cases where the parties have conducted little discovery and the court has minimal evidence before it, courts still require some evidence of a common, unlawful policy beyond conclusory assertions in pleadings, affidavits, or declarations.  *Treme v. HKA Enters., Inc.,* No. 07-1134, 2008 WL 941777, at *2-3 (W.D. La. Apr. 7, 2008), Ex. K ("[U]ncorroborated assertions, without more, do not fulfill the plaintiffs burden under *Lusardi*."); *Aguirre v. SBC Communications, Inc.*, No. Civ. A. H-05-3198, 2006 WL 964554, at *6 (S.D. Tex. Apr. 11, 2006), Ex. L (finding that brief and conclusory statements in plaintiffs' complaint and motion for notice are insufficient); *Prizmic v. Armour, Inc.*, No.05-cv-2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) (Dist. Ct. Judge Rosenthal), Ex. M (noting that merely accepting conclusory allegations could lead to a "frivolous fishing expedition conducted by the plaintiff at the employer's expense").

At the initial notice stage, Plaintiffs must provide the Court with some evidence (a "reasonable basis") showing that Defendants subjected a group of similarly situated potential putative class members to a "single decision, policy or plan violating the provisions of the FLSA."  *Bodle v. TXL Mortgage Corp.*, Civil Action No. H-12-1515, 2012 WL 5828616**,** at *7

(S.D. Tex. Oct. 2, 2012) (Magis. N. Johnson), Ex. N; *Mooney v. Aramco Services, Co.*, 54 F.3d 1207, 1214, n.8 (5th Cir. 1995); *Songer v. Dillon Res., Inc.*, 569 F.Supp.2d 703, 707 (N.D. Tex. 2008) (quoting *H & R Block*, 186 F.R.D. at 400).  Plaintiffs' burden is to show that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit.  *Wilson v. Navika Capital Group, LLC*, Civil Action No. H-10-1569, 2011 WL 3020876, at *3 (S.D. Tex. July 22, 2011), Ex. O.  "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Simmons v. T-Mobile USA, Inc.,* No. H-06-1820, 2007 WL 210008, at *4 (S.D. Tex. Jan. 24, 2007) (Dist. Ct. Judge Atlas), Ex. P; *Aguirre*, 2006 WL 964554, at *5, Ex. L; *England v. New Century Fin. Corp.*, 370 F.Supp.2d 504, 507 (M.D. La. 2005).

As noted in decisions within this District, courts typically decline to conditionally certify a collective action <u>when the determination necessary to resolve the dispute would require a highly individualized inquiry</u>.  *See, e.g., Memorandum and Recommendation at 11, 15, Andel v. Patterson-UTI Drilling Company, LLC*, No. 6:10-cv-36 (S.D. Tex. Mar. 16, 2011), ECF No. 52 (Magis. N. Johnson) (recommending denial of motion for conditional certification of FLSA collective action on the basis that the Plaintiffs' claims "must necessarily be resolved on a case-by-case basis"), Ex. F; *Aguirre*, 2006 WL 964554, at *7, Ex. L (finding conditional certification inappropriate where differences among the potential plaintiffs predominated over their similarities).

**B.** **PLAINTIFFS' PUTATIVE CLASS, AS DEFINED IN THEIR COMPLAINT, WAS NOT SUBJECTED TO A "SINGLE DECISION, POLICY OR PLAN VIOLATING THE PROVISIONS OF THE FLSA."**

As noted above, Plaintiffs and all putative class members cannot constitute a single class for purposes of conditional certification. Plaintiffs have specifically and repeatedly asked this Court to certify "three separate subclasses: Loan Officers/Originators, Branch Managers, and Account Executives." Plaintiffs' Motion at 13. By their own admissions, Plaintiffs acknowledge that "Plaintiffs and putative collection action members are current and former employees of Defendants who were in three different job classifications" (Plaintiffs' Motion at 1, 5); pursuant to different pay schemes (Plaintiffs' Motion at 1, 5-7); and with separate and distinct groups of "other aggrieved employees." *See* Plaintiffs' Motion at 14-15; *see also* Ex. I to Plaintiffs' Motion at ¶¶ 2, 11-12 (explaining the differences in the job duties of each subcategory).

The key consideration in determining whether Plaintiffs are similarly situated to the putative class is whether there are "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" that violated the FLSA. *Bodle*, 2012 WL 5828616 at *7 (Magis. N. Johnson), Ex. N. Plaintiffs make no allegations, much less "substantial allegations" that the collective group—combining all three subcategories—should be conditionally certified as one group. Defendants' allegations, taken together, establish without doubt that the putative class members were not subject to "a single, decision, policy or plan" that violated the FLSA.

Even if Plaintiffs did contend that the subcategories of putative class members should be certified as one collective class, the Court would have to deny conditional certification because: (1) Plaintiffs fail to adequately allege that Mid America subjected the entire group of potential class members to a uniform pay practice or policy; (2) Plaintiffs' claims that they were not paid for hours worked, in effect, are "off the clock" claims that would require a highly individualized

analysis; (3) Mid America classifies each subcategory differently under the applicable exemptions; and (4) in order to prove their claims, Plaintiffs will have to show at least Plaintiff Owens violated not only Mid America's timekeeping and compensation policies, but also the law.

Courts have found conflicts of interest such as this one specifically between Plaintiff Owens and the Loan Officers in the Magnolia Branch to be irreconcilable conflicts of interest that warrant denial of certification.  A court should not conditionally certify a class where liability will depend on one class member proving that another violated his or her rights.  *See Ellerd v. County of L.A.*, No 08-4289, 2009 WL 982077, at *5 (C.D. Cal. Apr. 9, 2009), Ex. Q ("The Court concludes that conditional certification is not appropriate due to the conflict between plaintiffs and their supervisors.  In order to prove their claims, the social workers will have to show that their supervisors violated federal law and defendant's official policies."). Here, Branch Manager Charles Owens was responsible for reviewing and approving all Loan Officer timesheets before submitting them to Mid America.  In addition, there is evidence that Mr. Owens either instructed Loan Officers not to submit overtime hours or authorized the manipulation of Loan Officer timesheets to reduce hours worked.  *See* Decl. of Shelly Hatherly at ¶¶ 8, 9, Ex. G.  Accordingly, to the extent Plaintiffs seek to certify all the subcategories as one collective class, the irreconcilable conflict posed by conditionally certifying a class that includes both Branch Managers and Loan Officers requires that Plaintiffs' Motion be denied.

**C.     LOAN OFFICERS ARE NOT A GROUP OF SIMILARLY SITUATED POTENTIAL PUTATIVE CLASS MEMBERS SUBJECTED TO A "SINGLE DECISION, POLICY OR PLAN VIOLATING THE PROVISIONS OF THE FLSA."**

1.     Pre- and Post- DOL change in FLSA interpretation creates <u>dissimilar groups of Loan Officers</u>.

Up until March 2010, Mid America compensated its Loan Officers as FLSA exempt employees pursuant to the DOL's 2006 Interpretation Letter stating that loan officers are "exempt administrative employees" under the FLSA. *See* the 2006 Interpretation Letter, Ex. D. Accordingly, and pursuant to the Portal-to-Portal Act, 29 U.S.C. § 259, Mid America cannot be liable for any alleged failure to pay minimum wages or overtime compensation during the period of its reliance on the DOL's 2006 Interpretation Letter. *See* 29 U.S.C. § 259.[7]

The DOL withdrew the 2006 Interpretation Letter on March 24, 2010, and reversed its previous position that loan officers were exempt employees under the FLSA. *See* the 2010 Interpretation Letter, Ex. E. Within a week of the publication of the DOL's new interpretation of law, Mid America began taking steps to alter Mid America's policies to offer a compensation system to its Loan Officers that was consistent with the 2010 Interpretation Letter. *See* Nguyen Decl. at ¶ 11, Ex. A. Mid America's Human Resources Coordinator Tiffany Loudermilk was tasked with revising the compensation structure in order to transition loan officers to hourly employees "per DOL requirements." *See* email from T. Loudermilk to J. Bode and M. Kennemer of April 28, 2010, Ex. 4 to the Nguyen Decl. attached hereto as Ex. A.

Within months of the DOL's change in the law, Mid America required that all of its Loan Officers accurately enter and report their time worked, including any hours worked in excess of

---

[7] "In any action or proceeding based on any act or omission on or after May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938…if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged."  29 U.S.C. § 259.

forty (40) hours per work week, in a time-keeping system called Timepro.  *See* Nguyen Decl. at ¶ 12, Ex. A.  Mid America provided training to its Loan Officers and their managers in the company on the new policy and how to work with this timekeeping system to accurately report work hours.  *See id.*  Using their individual login and passwords, Loan Officers submitted their timesheets to their Branch Manager for review at the end of each pay period (every two (2) weeks).  After the Branch Managers reviewed and signed off on the Loan Officer's time entry and added any additional commissions earned for loans closed and funded, they submitted the information to Mid America's corporate headquarters, where Payroll downloaded all approved hours and submitted to their payroll vendor for processing.[8]  *See id.* at ¶ 14.

Importantly, Mid America paid both minimum wage and overtime based on the timesheets entered.  *See id.*  For each hour worked and reported in excess of forty (40) hours per work week, it was Mid America's policy to automatically pay time and a half of the Loan Officer's regular rate of pay.  *See id.*

As of January 1, 2011, Mid America completed the changes to its company policy and systems. Since implementation, Mid America has paid all loan officers in accordance with the new policies.  To date, Mid America has paid thirty-four (34) Loan Officers overtime pay based on their submitted time reports.  *See id.* at ¶¶ 12-13.  Mid America is unaware of any time records submitted by any employee claiming overtime where Mid America did not pay the required overtime amounts.  *See id.*  Notably, <u>no Plaintiff in this case ever submitted time reports</u> <u>claiming to have worked in excess of forty (40) hours per week during their employment with</u> <u>Mid America</u>.  *See id.*  Therefore, due to the DOL's reversal of its longstanding position, and Mid America's resulting compliance, at least three disparate groups exist within the Loan Officer

---

[8] Mid America used the timekeeping system provided by TriNet in 2010 and transitioned over to Ceridian's timekeeping system, Timepro, on January 1, 2011.  *See id.*

subcategory: (1) those properly classified as exempt before DOL's change; (2) those employed with Mid America as it changed its policies; and (3) those who were properly paid overtime on submitted time reports. These distinctions make conditional certification improper.

2. During the 18-month potential class period, Plaintiff Loan Officers' apparent failure to comply with Mid America policy renders them <u>dissimilar to other Loan Officers</u>.

Mid America's time entry policy and requirements are clear. Mid America's corporate policy requires its Loan Officers to enter their time accurately and to be paid for all time entered. *See id.* at 12. Mid America trusts and requires its hourly employees to: (a) enter their actual time worked into a web-based timekeeping system called Timepro; and (b) affirmatively attest to the accuracy of their time records. *See id.* Plaintiffs' Second Amended Complaint (Dkt. No. 17) and Plaintiffs' Motion are notably silent as to why these individual Loan Officers in the Magnolia Branch failed to enter the overtime they now claim to have worked. Instead, each Loan Officer Plaintiff submitted declarations asserting the conclusory allegations regarding Mid America's alleged "policy" to violate the FLSA:

> I routinely worked more than 40 hours per workweek. I was not compensated in any extra amount for my overtime. In the past three years, there were hundreds of Loan Originators/Loan Officer for Mid America who had much of the same job duties that I did and were paid the same way I was paid.

Ex. A-H to Plaintiffs' Motion.[9] Essentially, Plaintiffs are trying to certify a class seeking to recover for overtime hours worked "off the clock" but not paid. However, Plaintiffs must—but did not—submit evidence that the reason why the employees were not compensated is because of a corporate decision to deny overtime compensation to a class of employees. Plaintiffs'

---

[9] These declarations were submitted by Plaintiffs Dodson, Gray, Guillory, White, Knigge, Phillips, Stanger, and Hargrove. Plaintiffs Owens and Moody submitted similar allegations stating, "I routinely worked more than 40 hours per workweek. I was not compensated in any extra amount for my overtime. In the past three years, given my position in the company, I know that there were 10-15 branch managers for Mid America who had much of the same job duties that I did and were paid the same way I was paid." Ex. I and J to Plaintiffs' Motion. Plaintiff Hughes alleges "I routinely worked more than 40 hours per workweek. I was not compensated in any extra amount for my overtime I know much of the workforce of Mid America. I believe that many others would like to join this lawsuit seeking overtime pay." Ex. K to Plaintiffs' Motion.

declarations make no reference to any such corporate decision, plan, or policy.  *See generally, Griffith v. Wells Fargo Bank, N.A.*, Civ. A. No. 4:11-CV-1440, 2012 WL 3985093, at *2 (S.D. Tex. Sept. 12, 2010) (J. Harmon), Ex. R (Even if employees may be similarly situated with regard to their positions and responsibilities, "they are dissimilar for the purposes of FLSA class treatment if the named plaintiff fails to adequately allege that their employer subjects them to uniform pay practices or policies.").

The only company policy in evidence is Mid America's FLSA-compliant policy that requires Loan Officers to document all hours worked and submit detailed timesheets to Mid America to be compensated with a guaranteed hourly minimum wage and any overtime. Plaintiffs' conveniently omit any reference to this FLSA-compliant policy and ignore the fact that each Loan Officer Plaintiff submitted timesheets that fail to show a single hour of overtime worked or submitted to Mid America. Plaintiffs are not similarly situated to other potential Loan Officers who properly reported overtime hours worked and were properly paid overtime by Mid America, making conditional certification improper.

3.   Plaintiffs' claims are "off the clock" claims, which are rarely if ever certified.

Indeed, Plaintiffs' allegations are analogous to the "off the clock" claims asserted in *Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1046 (N.D. Ill. 2003).  In *Flores,* the plaintiffs, like Plaintiffs here, based their motion on a few affidavits stating that they and "other employees" routinely worked overtime but were paid for only eight (8) hours per day.  The court found that the plaintiffs' affidavits, which stated that "they and other employees" worked over ten (10) hours per day but were only paid for eight (8) hours, "is not the type of 'factual' showing that would establish a colorable common policy or plan."  *Id.*  Courts routinely find "off-the-clock" work claims not suitable for conditional certification under the FLSA because

significant individual considerations prevent plaintiffs from demonstrating that potential class members are "similarly-situated."

> [T]he 'off-the-clock' claim does not involve regularly scheduled time that is worked by all members of the class. Rather, each of the Plaintiffs may potentially claim that on any given day he or she arrived early or departed outside of their regularly scheduled hours and were not compensated for such.  The circumstances of those individual claims potentially vary too widely to conclude that in regard to their 'off-the-clock' claim, the Plaintiffs are similarly situated.

*Lawrence v. City of Philadelphia, P.A.,* No. 03-CV-4009, 2004 WL 945139, at *2 (E.D. Pa. 2004), Ex. S; *see also Castle v. Wells Fargo Fin. Inc.,* No. C-06-4347, 2008 WL 495705, at *5 (N.D. Cal. Feb. 20, 2008), Ex. T (finding that individual issues often predominate in off-the-clock actions such that employees are not similarly situated); *Marsh v. Butler*, 242 F.Supp.2d 1086, 1094 (M.D. Ala. 2003) ("The Plaintiffs also stated that the Defendant had a policy of knowingly and purposefully failing to pay overtime wages. The Plaintiffs have not explained, however, what the basis of this allegation is....").[10]  Here, Plaintiffs' proof of their claims will necessarily break down into individual proof of time worked but not reported (in violation of company policy) or compensated.  There will not be the kind of uniform, group-wide corporate policy issues that make a typical FLSA case proper for collective action and certifiable.  Indeed, the individualized inquiries (and potentially individualized non-compliance with the corporate policy) makes certification improper.

---

[10] Many cases deny class certification for off-the clock claims.  *See generally, Dudley v. Texas Waste Systems, Inc.,* No. 05-CA-0078, 2005 WL 1140605, at *2 (W.D. Tex. May 16, 2005), Ex. U; *Velasquez v. HSBC Finance Corp.*, No. 08-4592-SC, 266 F.R.D. 424, at *7 (N.D. Cal. Feb. 18, 2010); *Thompson v. Speedway SuperAmerica LLC*, No. 08-CV-1107, 2009 WL 130069, at *13 (D. Minn. Jan. 20, 2009), Ex. V; *West v. Border Foods, Inc.*, No. 05-2525, 2006 WL 1892527, at *7-10 (D. Minn. July 10, 2006), Ex. W; *Hinojos v. The Home Depot, Inc.*, No. 2:06-CV-00108, 2006 WL 3712944, at *2 (D. Nev. Dec. 1, 2006), Ex. X.

4.    Within the Loan Officer subcategory, putative members would be subject to <u>different statutes of limitation, thereby creating dissimilar subgroups</u>.

Any claims existing prior to January 1, 2011, are barred by the FLSA's two (2) year statute of limitations. 29 U.S.C. § 255(a).[11]   Although Plaintiffs have insipidly attempted to allege a willful FLSA violation in order to avail themselves of the extended three (3) year statute of limitations, they have failed to plead willfulness with sufficient facts.  *See* Plaintiffs' Second Amended Complaint at ¶¶ 43-44 (Dkt. No. 17).  Willfulness requires Plaintiffs to show that Mid America "knew or showed reckless disregard" for whether its pay practices violated the FLSA. *Mclaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133-34 (1988).  To warrant application of the three (3) year statute of limitations, "it is insufficient to merely assert that the employer's conduct was willful; the Court must look at the underlying factual allegations in the complaint to see if they would support more than an ordinary FLSA violation…."  *Ochoa v. Pearson Education, Inc.*, Civil Action No. 11-cv-1382, 2012 WL 95340, at *3 (D.N.J. Jan. 12, 2012), Ex. Y (unpublished opinion) (three (3) year statute of limitations not appropriate where allegations did not rise significantly above legal conclusions and plaintiff "did not provide Court with sufficient information to determine that Defendant showed reckless disregard for whether its pay practices violated the FLSA").

Here, Plaintiffs fail to allege any specific factual allegations that Mid America showed reckless disregard for whether its pay practices violated the FLSA.  *See* Plaintiffs' Second Amended Complaint at ¶¶ 54-58 (Dkt. No. 17).  Plaintiffs generally allege that, "Defendants knew or should have known of the FLSA's requirements to pay certain workers minimum wage

---

[11] "Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C. 201 et seq.]…may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

and overtime, and they failed to follow the law." *Id.* at ¶ 54. These allegations do not rise above mere legal conclusions, which this Court need not accept as true and are wholly lacking in any facts satisfying even the pleading requirement of willfulness.

Conversely, Mid America has positive and compelling proof that it acted in good faith in trying to comply with the change in law. As soon as the DOL withdrew its previous interpretation and determined that loan officers were no longer exempt as administrative employees under the FLSA, Mid America exerted significant effort to amend its policies, modify its payroll practices, train its supervisory employees, and to implement and communicate the changes company-wide, all in an effort to come into full compliance with the FLSA. *See* Nguyen Decl. at ¶ 33. Plaintiffs have not refuted these facts. Absent a more particular factual showing, the Court cannot reasonably infer that Defendants acted willfully, nor justifiably impose the three (3) year limitations period Plaintiffs seek.

Regardless, even if the three (3) year statute of limitations for willfulness could apply, the majority of the named Plaintiff loan officers were part time employees in 2010. *See* Nguyen Decl. at ¶ 6 (Named Plaintiffs Guillory, Gray, Phillips, Stanger, and Moody all worked exclusively as part-time Loan Officers in 2010). Accordingly, their own individual claims to overtime pay in 2010, are highly suspect as they were only part-time employees to begin with, and they certainly are not similarly situated to other full-time Loan Officers for purposes of class certification.

5.    Instructions by Owens to work off the clock create dissimilarity
      between Plaintiffs and other Loan Officers and cast doubt on
      willingness of others to opt in to this lawsuit.

After this lawsuit was filed, Mid America began conducting its own investigation into the workings of the Magnolia Branch and uncovered proof from current loan officers in the Magnolia Branch that on several occasions, named Plaintiff and Magnolia Branch Manager

Charles Owens, instructed Plaintiffs not to enter any overtime worked.  *See* Decl. of Shelly Hatherly at ¶¶ 6-9, Ex. G; Decl. of Pam Allee at ¶ 6, Ex. H; and Decl. of Debra Thompson at ¶¶ 8-9, Ex. I.  On one or more occasion where Loan Officers  reported their time worked as over forty (40) hours per week, Jamie Naleway, an Operations Manager at the Magnolia Branch under Charles Owens, went into the time system and changed those hours to reduce them so that they no longer reflected an amount over forty (40) hours.  *Id.*  The reasoning behind this is that Plaintiff Owens' compensation depended upon the profitability of the Magnolia Branch.  The more overtime entered by Loan Officers, the lower the profitability of his Branch, and hence his compensation.

Thus, any alleged failure to pay overtime is the result of a rogue Branch Manager who failed to follow corporate policy.  *See* First Amended Answer and Counterclaim against Plaintiff Owens (Dkt. No. 28).  Accordingly, such specific and individual allegations related to one malfeasant Branch Manager render the named Loan Officers dissimilar from other Loan Officers at other branches.  *See Griffith,* 2012 WL 3985093, at *4-5, Ex. R (denying class certification where Defendant had timekeeping policy in place yet named plaintiff felt "pressure" not to enter overtime; given the clear written corporate policy requiring time entry, any alleged "pressure" "must be the product of unofficial limitations…[and] there [was] no indication that loan processors nationwide felt a similar pressure…or were subject to a uniform, or even similar, policy of unlawful pressure against overtime reporting").

Because Plaintiffs have failed to identify any companywide, national policy or plan of denying overtime pay or minimum wage, Plaintiffs have failed to show its putative class members are "similarly situated" and conditional certification must be denied.  *See generally, Richardson v. Wells Fargo Bank, N.A.*, Civil Case No. 4:11-CV-00738, 2012 WL 334038, at *7 (S.D. Tex. Feb. 2, 2012) (J. Atlas), Ex. Z (denying class certification where "plaintiffs have

failed to show that they and the putative collection action plaintiffs were similarly denied overtime pay under a 'single decision, policy, or plan' that violated the FLSA").

For all the aforementioned reasons, Plaintiffs' job classification of Loan Officers/Loan Originators cannot be certified as a class.

### D.   BRANCH MANAGERS OFFICERS ARE NOT A GROUP OF SIMILARLY SITUATED POTENTIAL PUTATIVE CLASS MEMBERS.

Plaintiffs contend Defendants misclassified Branch Managers as exempt under the FLSA. From 2010 to the present, Mid America has employed approximately 10-15 people as Branch Managers or with responsibilities of a Branch Manager within the company.  *See id.* at ¶ 23.

1.   Plaintiff Owens is Dissimilar To Any Putative Class of Branch Managers.

As set forth in detail above, Plaintiff Owens' own fraudulent conduct in allegedly violating company policy and encouraging non-compliance with the FLSA for his own financial gain renders him dissimilar from other Branch Managers.  There is no evidence that any other Branch Manager engaged in such fraudulent activity, and resolution of the dispute with Plaintiff Owens will require a highly individualized inquiry.  *See generally, Castle*, 2008 WL 495705, at 5, Ex. T (resolution of each plaintiffs' claim will require individualized inquiries about his or her specific managers' policies and practices).  There is also no evidence that any other Branch is currently involved in litigation with Mid America that is pending in State Court.  Plaintiff Owens has asserted a counterclaim for unpaid wages rendering his related FLSA claim a compulsory counterclaim in State Court.  Nonetheless, Mr. Owens' State Court counterclaim alleges that he is due unpaid wages based on commissions, not a guaranteed regular hourly rate.  There is certainly no evidence that any other Branch Manager simultaneously seeks remedies under inconsistent theories of recovery.  Under such circumstances, class certification is not appropriate.

Plaintiff Owens is also exempt as a highly compensated employee. During the eighteen (18) months at issue in this case, Plaintiff Owens was paid upward of <u>One Million Dollars</u> ($1,000,000.00) in compensation—an average <u>monthly</u> income of over $55,500. The table below shows Plaintiff Owens' compensation from Mid America for 2010, and the six (6) months of his employment in 2011 before he left the company in June 2011:

| Year | Total Compensation |
|------|-----|
| 2010 | $574,920.82 |
| 2011 (6 months) | $442,226.27 |
| **TOTAL FOR 18 MONTHS** | **$1,017,147.09** |

There is no evidence that other Branch Managers earned as much as Plaintiff Owens.

       2.    <u>Plaintiff Moody is Dissimilar To Any Putative Class of Branch Managers</u>.

Plaintiff Moody was not a "Branch Manager" nor did he perform any personnel related duties of a Branch Manager. Instead, Plaintiff Moody was employed by Mid America from October 25, 2010 to March 25, 2011, as a part-time Loan Officer, and he continued to work at Mid America under the title "Group Manager" for the following three (3) months. As explained above, this title and job position does not otherwise exist at Mid America. *See supra* Section (II)(C)(3). He earned $26,021.30 as a part time Loan Officer in 2010, for roughly ten (10) weeks of employment, and $58,473.29 in 2011, for six (6) months of employment (three (3) months as a Loan Officer and three (3) months as a "Group Manager").

Notably, Plaintiff Moody's declaration submitted in support of Plaintiffs' Motion is exceptionally vague and conclusory with regard to his job duties and should be stricken. The sum total of his job description is as follows:

> In 2010 going forward, with Charles Owens, I primarily managed a team of loan officers, processors, and other production personnel for Mid America. My duties were similar to those of a branch manager. I also did some recruiting for Mid America, but I primarily did this from the office and this was not my primary responsibility.

Ex. J to Plaintiffs' Motion at ¶ 2.  This description is completely devoid of detail and does not demonstrate that he was similarly situated to any other employee in Mid America.  *See generally, Rogers v. Ocean Cable Group, Inc.*, Civil No. 10-4198, 2011 WL 6887154, at *4 (D.N.J. Dec. 29, 2011), Ex. AA (denying conditional class certification where "there is no way from the record before the Court to know that the plaintiffs' situation equates, even in a rough way, with other technicians" because "plaintiffs have not provided any evidence that they have personal knowledge or otherwise observed other technicians working in excess of a 40 hour workweek"); *see Harris v. Southwest Power Pool, Inc.*, No. 4:11cv0069 JLH, 2011 WL 5402763, at *2-3 (E.D. Ark. Nov. 8, 2011) (Dist. Judge Holmes), Ex. BB (evidence falls short of meeting even the lenient standard because only "one or two employees…perform the human resources work which [plaintiff] performs).   Accordingly, Plaintiff Moody is not similarly situated to any other Mid America employee and his declaration must be stricken.

E.    **ACCOUNT EXECUTIVES ARE NOT A GROUP OF SIMILARLY SITUATED POTENTIAL CLASS MEMBERS.**

It would be futile to certify a class of Account Executives.  Account Executives at Mid America had the following job duties: soliciting new wholesale business and managing current wholesale production which requires making outside sales calls and visiting potential customers.  *See* Nguyen Decl. at ¶ 16, Ex. A.  Unlike Loan Officers, Account Executives did not work on any individual loans or manage any loans to closing.  *See id.*  Rather, Account Executives sold Mid America's lending services to mortgage brokers or smaller mortgage bankers that already had loans but needed a larger lender to fund such loans.  Thus, it was the Account Executive's job to preserve and foster the relationships with those Mid America clients.  *See id.*

Plaintiff Nicholas Hughes held one of three (3) positions of Account Executive at Mid America from July 31, 2008 to June 17, 2011.  *See id.* at ¶ 15.  The only two (2) other potential

members of this class were Aubrey Johnson, whose employment ended in December 2011, and Diana Landry, who resigned in June 2011.  *See id.* at ¶ 15.  Neither of the potential members worked in the Magnolia Branch.  Ex. K to Plaintiffs' Motion ¶ 4.

Plaintiff Hughes' declaration submitted in support of Plaintiffs' Motion clearly states that in late 2009, his "primary job duty was to recruit persons to come work with Mid America on a retail model."  Ex. K to Plaintiffs' Motion at ¶ 2.  He "still worked with [his] mortgage broker relationships, but [he] now did this primarily as an inside salesperson."  Ex. K to Plaintiffs' Motion ¶ 3.  As such, Plaintiff Hughes' own testimony demonstrates that he was not similarly situated to any other Account Executive in Mid America.  *See generally, Rogers*, 2011 WL 6887154, at *4 (D.N.J. Dec. 29, 2011), Ex. AA.

Moreover, Plaintiffs' burden is to show that: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit."  *Wilson*, 2011 WL 3020876 at *3, Ex. O; *see also Simmons*, 2007 WL 210008, at *4, Ex. P ("A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice."); *Aguirre*, 2006 WL 964554, at *5, Ex. L; *England*, 370 F.Supp.2d at 507.  There is absolutely no evidence that other potential Account Executive employees intend to opt in to this lawsuit.  Plaintiff Hughes states that he "know[s] much of the work force of Mid America" and that the other Account Executives during the relevant period worked in Dallas, Texas and Austin, Texas.  With a class of only three, both known to Plaintiff Hughes, Plaintiffs would have put forward evidence of other potential class members' intent to join the lawsuit if it were available.  This subcategory should not be conditionally certified as a class.

**F.   THERE IS NO EVIDENCE PUTATIVE CLASS MEMBERS WILL OPT IN TO THE OTHER PUTATIVE CLASSES.**

Beyond the Account Executives, Plaintiffs have set forth no evidence that other putative class members will opt in to this lawsuit.  This case was filed four (4) months ago and no additional Plaintiffs have yet to join.  Plaintiffs must show that "individuals want to opt in to the lawsuit."  *Wilson*, 2011 WL 3020876, at *3, Ex. O.  Here, there is absolutely no evidence that other employees intend to do so.  *See Santielices v. Cable Wiring, Inc.*, No. 98-7489CIV, 1999 WL 1007807 (S.D. Fla. Sept. 28, 1999), Ex. CC (denying class certification where plaintiff failed to provide any evidence that others, similarly situated, desired to opt in); *see also Butcher v. Delta Memorial Hospital*, No. 5:12CV00241, 2013 WL 1668998, at *4 (E.D. Ark. Apr. 17, 2013), Ex. DD (denying conditional certification where plaintiffs failed to present evidence "that other similarly-situated individuals, who are not already parties to this lawsuit, give consent or desire to opt-in").  The lack of attention from other potential class members to date, coupled with the plethora of facts and circumstances, indicate that only the named Plaintiffs have any interest in pursuing these unsupported claims against Mid America.  It is more than coincidence that all of the Plaintiffs hail from the Magnolia Branch supervised by Plaintiff Owens; none submitted any records of overtime hours worked while under his supervision; all left Mid America in the summer of 2011 with Plaintiff Owens; and now, all work for Plaintiff Owens at his mortgage company.  *See* Nguyen Decl. at ¶ 7, Ex. A.  Defendants are not swayed, and Plaintiffs have failed to submit any evidence that any other Mid America employees beyond the group of named Plaintiffs will opt in to this lawsuit.

## V.   CONCLUSION

For the foregoing responses, Plaintiffs' Emergency Motion for Conditional Class Certification and Notice to Potential Class Members should be denied.

Dated: June 7, 2013                    Respectfully submitted,


                                        PRIEST JOHNSON, PLLC


                                        By:   /s/ Kimberly C. Priest Johnson
                                              Kimberly C. Priest Johnson
                                              Texas Bar No. 24027753
                                              S.D. Texas Federal ID No. 623642
                                              kpj@priestjohnsonlaw.com
                                              8401 N. Central Expressway, Suite 280
                                              Dallas, Texas 75225
                                              (214) 720-4000
                                              (214) 723-7652 – facsimile

                                        **ATTORNEY-IN-CHARGE**
                                        **FOR DEFENDANTS**
                                        **MID AMERICA MORTGAGE, INC., F/K/A**
                                        **SCHMIDT MORTGAGE COMPANY,**
                                        **JEFFREY E. BODE AND**
                                        **MICHAEL KENNEMER**

OF COUNSEL:

Stephen E. Hart
Texas Bar No. 00793911
S.D. Texas Federal ID No. 19382
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
500 Dallas, Suite 3000
Houston, Texas 77002
stephen.hart@ogletreedeakins.com
(713) 655-0855
(713) 655-0020 facsimile

## CERTIFICATE OF SERVICE

        The undersigned hereby certifies that a true and correct copy of the above and foregoing
document has been served via the Court's ECF system on June 7, 2013.


                                        /s/ Kimberly C. Priest Johnson
                                        Kimberly C. Priest Johnson